# CHARLESTON.

## J. S. THURMOND et al., EXRS, ETC., v. GUYAN VALLEY COAL COMPANY.

### Submitted January 14, 1920.   Decided February 10, 1920

1. EXECUTORS AND ADMINISTRATORS—*Representative May Not as General Rule Continue Decedent's Business.*

   Executors or administrators of a decedent's estate generally have no right, and it is no part of their duty in administering an estate committed to their care and management, to continue in their names the business in which decedent was engaged at the time of his death, unless he has by will conferred upon them that power, or his legatees or distributees and creditors, if any, consent thereto.   (p. 504).

2. SAME—*Estate Not Liable on Contracts of Personal Representative.*

   The general rule is that a personal representative cannot charge the estate by contracts originating with himself, although for the benefit and in the interest and on behalf of the estate; such contracts binding him only in his private capacity. (p. 504).

3. SAME—*Rule as to Right to Sue in Individual or Representative Character Stated.*

   Where the contract or transaction which is the basis of the suit is one to which the representative is a party, as, for instance, where the subject matter of the litigation is a promise made by the defendant, not to the decedent, but to the representative, the latter may bring the suit in his individual or in his representative character, as he may elect.   (p. 505).

4. SAME—*Representative or Individual Capacity of Suit is Determined from Pleadings.*

   Whether the plaintiff has instituted an action in a representative or individual capacity, and whether words following his name are to be deemed descriptive of his person or of the character in which he sues, is to be determined from all the allegations of the pleading.   (p. 506).

5. SAME—*Declaration Not Showing Whether Action is in Fiduciary or Individual Capacity May be Demurrable.*

   Where a personal representative elects to sue in his fiduciary instead of his individual capacity on a cause of action having an apparently remote and doubtful connection or relation,

if any, to the estate represented by him, his pleading should disclose such relevancy where it does not otherwise appear, and a declaration that fails to reveal such connection or relation between the recovery sought and the estate represented may for that reason be demurrable.    (p. 506).

6.    ASSUMPSIT, ACTION OF—*Consideration Must be Alleged in Action on Special Contract.*
     In an action of assumpsit on a special contract to recover damages the consideration must substantially be averred in the declaration.    (p. 507).

7.    CONTRACTS—*Written Contract Embodying Prior Oral Agreement Partly Executed Does Not Rest on Past Consideration.*
     A contract which embodies in writing a prior oral agreement, fully executed on plaintiff's·part, is one not based upon a past consideration, but the mere embodiment of a pre-existent agreement into a formal contract.    (p. 507).

Certified Question from Circuit Court, Cabell County.

Action of assumpsit by J. S. Thurmond and others, as executors of W. D. Thurmond, deceased, against the Guyan Valley Coal Company.    Demurrer to second and third special counts sustained, and question certified.

*Affirmed.*

*Fitzpatrick, Campbell, Brown & Davis,* for plaintiffs.
*Deegan & Bowman* and *Holt, Duncan & Holt,* for defendant.

LYNCH, JUDGE:

The action of the circuit court in holding the second and third and only special counts of the declaration insufficient on demurrer to permit recovery by plaintiffs, suing in assumpsit as executors, is here upon a certificate for the sole and only purpose of determining the propriety and correctness of that ruling.

On the 4th day of April, 1917, according to the averments of the second count, plaintiffs, "in their said capacity of executors of the last will and testament of W. D. Thurmond, deceased," and defendant entered into a contract, on which the suit is based, whereby defendant for a valuable consideration promised and agreed with the plaintiffs, "in their said capacity," to pay them five cents for each ton of coal furnished by defendant to the Chesapeake & Ohio Railway Company or the Chesapeake & Ohio Railway Company of Indiana, under the terms

of an agreement entered into by defendant and the two railway companies October 20, 1915; and that pursuant thereto defendant did after April 4, 1917, furnish the two railway companies two hundred thousand tons of coal, for which it has failed and refused to compensate plaintiffs according to the terms of the contract. The only obvious difference between the two counts is that while the second does not show plaintiffs to have been the active agents in the procurement of the contract of October 20, 1915, relating to the coal to be furnished, and furnished, by defendant, and out of which the contract of April 4th arose, or that the latter is or is not in writing, the third count does show plaintiffs to have been the agents who conducted the negotiations resulting in the consummation of the contract of October 20th between the railway companies and defendant, and that its procurement was effected only by and through the efforts of plaintiffs under an oral agreement providing as compensation for that service five cents for each ton of coal so to be furnished by defendant to the companies, and which agreement was reduced to writing, signed and sealed by defendant, April 4, 1917, the terms of which the third count sets forth in extenso.

One of the objects urged alike against each count goes to the failure of both to disclose, otherwise than by the descriptive phrases, "in their said capacity of executors of the last will and testament of W. D. Thurmond, deceased," and "in their said capacity," any pecuniary advantage or profit that likely will or may enure to the estate represented by plaintiffs in the event of a successful termination of this action in their favor, or any connection or relation such estate has or may have with the cause of action averred in both counts; and not having done so, defendant questions the right of plaintiffs to maintain the action in the capacity in which they sue, and that having alleged a contract made by them in their representative character, they must show such connection or sue in their individual characters for a breach thereof.

When the testator died, whether before or after October 20, 1915, the date on which it is averred defendant contracted to furnish the coal, or whether the testator was in anywise instrumental in originating negotiations finally resulting in the October 20th contract, or participated in its procurement, or had

anything to do with its execution, neither count furnishes any information. As we have said, the second count does not show who was instrumental in negotiating that contract, but the third count discloses who were, namely, the plaintiffs. In other words, neither count by any averment shows any relation or connection between the testator's estate and the cause of action averred, otherwise than by the use of descriptive phrases, and these may and often do serve no purpose other than by way of identification.

Of course the rational inference from these averments excludes the idea of the testator's having had any knowledge of an intention on the part of the persons appointed by him to execute his will to act as brokers to effect contracts for the sale of coal or other like or similar contracts affecting his estate; and this want of knowledge on his part the third count makes obvious for it shows that it was procured through the efforts of the plaintiffs. Treating it as such, can they in their executorial capacity maintain an action on the April, 1917, contract, which is but the earlier contract between them and defendant reduced to writing, without in some manner showing on the face of the pleading otherwise than as they have done, how or in what way the value of the estate represented by them is to be enhanced in the event the litigation terminates in a judgment in their favor? This is the primary and obviously the most important question to be dealt with in determining the sufficiency of each count.

Executors or administrators of a decedent's estate have no right, and it is no part of their duty in administering an estate committed to their care and management, to continue in their names the business in which decedent was engaged at the time of his death, unless he has by his will conferred upon them that power, or his legatees or distributees and creditors, if any, consent thereto. Without such authority or consent they become personally responsible for any loss that may follow and out of the estate cannot reimburse themselves therefor. In other words, they take the estate as he left it, charged with the duty of administering it for the benefit of his creditors and distributees, and, as part of such duty, to reduce it to liquid assets and apply them to the payment of his indebtedness and distribute the resi-

due among the persons designated by his will, or, in the absence of such designation, among those legally entitled to share in it, and that also at the earliest opportunity consistent with due and orderly administration. *Hooper v. Hooper,* 29 W. Va. 276; Note, 40 L. R. A. (N. S.) 201, 204. And the general rule is that a personal representative cannot charge the estate by contracts originating with himself, although for the benefit and in the interest and on behalf of the estate, such contracts binding him only in his private capacity. *Wick* v. *Dawson,* 48 W. Va. 469, 472; *Thompson* v. *Mann,* 65 W. Va. 648; 18 Cyc. 247.

These propositions counsel do not gainsay, but those who speak for plaintiffs rely on a rule to the effect that sometimes and in some circumstances a personal representative may sue in his individual or representative character, as he may elect. The rule relied on is stated in 11 R. C. L. 287: "Where the contract or transaction which is the basis of the suit is one to which the representative himself is a party, as, for instance, where the subject matter of the litigation is a promise made by the defendant, not to the decedent, but to the representative, the latter may bring the suit in his individual or in his representative character, as he may elect."

To this statement of the law there can be no objection, for a similar holding exists in this state. *Elliott* v. *Blue,* 74 W. Va. 209. And the same rule is enunciated in 2 Schouler on Wills, Executors & Administrators (5th Ed.), §1292. But whatever may have been the right of the plaintiffs to sue in their individual capacity, they did not elect to pursue that course, but instead brought their action in a representative character. The capacity in which parties plaintiff have instituted a suit is to be determined from an examination of all the allegations of the declaration. *Hanson* v. *Blake, Adm'r,* 63 W. Va. 560. The whole tenor of the declaration in this case shows that plaintiffs are suing in a representative character. The phrases they have used so describe them; and the conclusion becomes irresistible because of the addition to the declaration of an averment setting forth plaintiffs' due appointment and qualification as executors, pursuant to the rule prescribed by this court in *Austin* v. *Calloway,* 73 W. Va. 231, and *Perry* v. *Coal Co.,* 74 W. Va. 122, where

suit is instituted by an administrator or executor in his representative capacity.

But plaintiffs contend that since this action is one which they could have brought in their individual character, all allegations referring to them as representatives of the estate of the deceased should be regarded as surplusage and as descriptive of the persons referred to, citing 11 R. C. L. 288. However that may be where the words used, as in *Hanson v. Blake, Adm'r,* 63 W. Va. 560, are merely descriptive of the person and not of the character or capacity in which he sues, yet the test there laid down is that whether words following the name of the party are to be deemed descriptive of his person or of the character in which he sues or is sued is to be determined from all the allegations of the declaration. The same doctrine is enunciated in 1 Woerner, American Law of Administration (2d Ed.), *643: "It is now generally held that the title and pleadings may be considered together to ascertain the true nature of the action, and it will be treated as an individual or representative one as disclosed upon an inspection of the whole record." See also 18 Cyc. 978-981. From an examination of the allegations of the declaration it is clear that the plaintiffs intended to sue in their representative character.

Since they have elected to sue in that capacity, should they not also show in their pleading some connection or relation between the recovery sought and the estate represented by them? We have discovered no case directly in point upon this question; nor have counsel cited us to any. But the requirement of an allegation in the pleading setting forth such connection or relation seems so easy to make, if the plaintiff is justified in suing in a representative capacity, and so conducive to accurate and scientific pleading and to a proper hearing of the cause, that we are disposed to regard it as essential. Of course, under our decisions, plaintiffs are bound personally by the contract, though in this case that imposes no burden upon them for they have already rendered the services which the contract sued on seeks to requite, and probably could have maintained a suit in their individual capacity. But since they have chosen openly and frankly to acknowledge that they are suing in a representative capacity, it imposes only a small additional burden to require

them to show some connection between the recovery sought and the estate which they represent. Such an averment will tend to greater certainty and accuracy in the proceeding, and may prevent confusion during the course of the trial. Both counts are defective in this patricular, and the demurrer thereto properly was sustained, subject of course to plaintiff's right to amend.

The further objection predicated also upon the insufficiency of each count relates to their alleged failure to state specifically the full consideration for the contract sued on, and seems to us to have some merit, at least as regards the second count, for in *Davisson* v. *Ford,* 23 W. Va. 617, point 8 of the syllabus, it is said: "In an action of assumpsit on a special contract to recover damages the entire consideration and the entire act to be done must be stated in the declaration." There the subject matter of the controversy was Ford's agreement to render to Davisson compensation for certain of the cattle belonging to him, then in the possession of Ford under a contract of bailment, and this court reversed the judgment for plaintiff because he did not prove the contract declared upon, the difficulty being the failure to state fully the conditions upon which the promise was based. This requirement the third count of the declaration does, but the second does not, fully comply with. The compliance and the failure to comply are obvious, for the averment in the second count does not show or recite any consideration for defendant's promise, while the third count fully sets forth the entire contract, which, being a sealed instrument, imports a consideration as well as states one. The contract merely embodied in writing a prior oral agreement fully executed on plaintiffs' part, and hence is not one based upon a past consideration. 1 Page on Contracts (2d Ed.), §629. In this aspect of the case, as it is presented and seems to us, the third count is sufficient and the second count insufficient.

·Whether these defects may be cured by amending the counts so as to show the purpose of the contemplated recovery to be to benefit the decedent's estate, or so as to permit plaintiffs to prosecute the action for their own benefit, we are without jurisdiction to decide upon this certificate, and the circuit court has not ruled thereon. Its other rulings we approve and direct our

approval to be certified thereto for such further proceedings in the action as it may deem advisable.          *Affirmed.*